IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MALIK SHABAZZ, R53189, | ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) |
| DR. BOOSE, SGT. BRIDWELL, SGT. STOUT, LT. REID, SGT. WILSON, LT. LIVINGSTON, C/O SEED, C/O CRAWFORD, DeeDee BROOKHART, NURSE PRACTITIONER WISE, | ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendant. | ) |

Case No. 24-cv-103-RJD

# MEMORANDUM AND ORDER

**DALY, Magistrate Judge:**

Plaintiff Malik Shabazz, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Joliet Treatment Center (JTC), brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. (Doc. 2). The present case was severed from an existing lawsuit, *Shabazz v. Issacs, et al.*, Case No. 23-cv-3005-SMY (S.D. Ill. Jan. 12, 2024) (Docket entry 17). At the time of severance, Plaintiff was prompted to notify the Court if he wished to proceed in this separate action, and he was warned that he would incur another $405 filing fee and the newly severed complaint would be subject to initial review. Plaintiff belatedly confirmed his desire to proceed, and the case was reopened at his request. (Doc. 11). The Complaint and the claims previously designated by the order of severance, are now before the Court for initial review. (Docs. 1-2).

Plaintiff's Complaint (Doc. 2) is now before the Court[1] for preliminary review pursuant to 28 U.S.C. § 1915A.  Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims.  *See* 28 U.S.C. § 1915A(a)-(b).  Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed.  28 U.S.C. § 1915A(b).  At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed.  *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### THE COMPLAINT

The above-captioned case is limited to Plaintiff's allegations concerning experiences at Lawrence from June to August of 2023.  The paragraphs in the complaint that relate to this timeframe are paragraphs 16-21.  (Doc. 2 at p. 16-17; ¶¶ 16-21).  Relevant to this time, Plaintiff alleges that before and after June of 2023, he filed several emergency grievances with Warden Dee Dee Brookhart about incidents and people that he believed posed a risk to his life.  (Doc. 2 at 16).  He further alleges that because of all the pain and suffering, he spent many days on crisis watch from June to August of 2023.  During periods of crisis watch, he alleges that Defendant Dr. Boose started a routine of having his wheelchair removed from his possession during crisis watch, which left him nearly unable to move.  Plaintiff alleges he was essentially left confined to his bed in a urine infested cell.  (Doc. 2 at 16).

Plaintiff claims that as a continuation of a conspiracy and retaliation, on August 8, 2023, Defendant Sgt. Bridwell intentionally removed his smock and exposed his naked body in the healthcare unit, and Defendant Sgt. Stout grabbed his genitals.  (Doc. 2 at 16).  Plaintiff was then

---

[1] The Court has jurisdiction to resolve Plaintiff's motions and to screen his Complaint in light of his consent to the full jurisdiction of a magistrate judge and the Illinois Department of Corrections' and Wexford's limited consent to the exercise of magistrate judge jurisdiction as set forth in the Memorandums of Understanding between the Illinois Department of Corrections and Wexford and this Court.

forcibly removed to crisis watch by Defendant Lt. Reid with unjustified excessive force. Plaintiff claims he reported the event, and as a result Defendant Sgt. Wilson came to his cell, slapped him, and demanded he strip without provocation and as a further act of retaliation.

In furtherance of the conspiracy and retaliation, Defendants Lt. Livingston, Sgt. Bridwell, C/O Seed and C/O Crawford pepper-sprayed Plaintiff, placed him in a hood, and roughed him up. Plaintiff was left bleeding until the next shift at which time a medical emergency was declared, and he was escorted to the healthcare unit. Plaintiff alleges that he filed numerous emergency grievances about the August 31 incident, but Defendant Brookhart continues to declare them non-emergencies despite him facing imminent danger. He alleges that because of this behavior, he believes Brookhart is a co-conspirator, who is working to deprive him of all medical and mental health care, as well as things like yard time, or appropriate handcuff accommodations for an existing arm injury. Plaintiff further alleges that Defendant Nurse Practitioner Wise and other healthcare staff have conspired and formed an alliance with correctional staff including Defendants Bridwell, Livingston, and Crawford to enact cruel and unusual punishment and to deprive him of his ADA rights. (Doc. 2 at 17).

By way of background, the Court notes that in another of the cases severed from Plaintiff's underlying case, claims have been designated concerning his ADA rights at Lawrence. *Shabazz v. Issacs, et al.*, Case No. 24-cv-101-SMY (S.D. Ill. Jan. 16, 2024) (docket entry 1) (claims designated as "Case 4" concern ADA accommodations at Lawrence).

Based on the allegations in the Complaint as severed for purposes of this case, the Court will adopt the prior designation of claims (Claims 14-18, Doc. 1 at 6), but it will renumber them as Claims 1-5:

> **Claim 1:** Defendant Boose confiscated Plaintiff's wheelchair and left him without access to a sink, toilet, or food slot while on crisis watch

|  |  |
|---|---|
|  | several times between June and August 2023, in violation of the Eighth Amendment; |
| **Claim 2:** | **Defendants Bridwell, Stout, and Reid used unauthorized force against Plaintiff when removing his smock in public, grabbing his genitals, and forcibly moving him to crisis watch on or around August 8, 2023, in violation of the Eighth Amendment;** |
| **Claim 3:** | **Defendant Wilson used excessive force against Plaintiff by slapping him and demanding that he strip on or around August 8, 2023, in violation of the Eighth Amendment;** |
| **Claim 4:** | **Defendants Livingston, Bridwell, Seed, and Crawford used excessive force against Plaintiff when they placed a hood over his head, beat him, and sprayed him with mace on or around August 31, 2023, in violation of the Eighth Amendment;** |
| **Claim 5:** | **Defendant Brookhart denied Plaintiff's grievances while conspiring with Defendants Wise, Bridwell, Crawford, and Livingston to retaliate against Plaintiff, in violation of the First and/or Fourteenth Amendment.** |

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

**PRELIMINARY DISMISSALS**

Plaintiff repeatedly alleges that from June-August of 2023, he believes many of the Defendants associated with this lawsuit acted pursuant to a conspiracy to retaliate against him. Allegations of a conspiracy are held to a higher pleading standard than other allegations. *Geinosky v. City of Chicago*, 675 F.3d 743, 749 (7th Cir. 2012). In order to state a civil conspiracy claim, "the plaintiff must [plead facts sufficient to] show that (1) the individuals reached an agreement to

deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights." *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015). "An allegation of parallel conduct and a bare assertion of conspiracy will not suffice. Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality. Hence ... they must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action." *Twombly*, 550 U.S. at 556–557 (2007); *see also Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009) (applying Twombly in a civil rights conspiracy claim and affirming dismissal of conspiracy claim resting on conclusory statement that defendants were aiding others in a civil rights violation).

Here, Plaintiff's allegations concerning a conspiracy are conclusory, and are not supported by any clear assertion of a meeting of the minds amongst defendants. At most, Plaintiff identifies a series of bad acts and indicates that because he has not received the responses he wants to complaints or grievances about the issues, then the defendants must be acting out a conspiracy. This is not enough to sustain a conspiracy claim, so any such allegation was not designated in a freestanding claim.

To the extent that Plaintiff alleges ADA violations, which he mentions in passing with Dr. Boose's denial of his wheelchair, and Nurse Practitioner Wise's role in a conspiracy, the Court finds the allegations about any ADA deprivation to be too vague to proceed as a freestanding claim. The conspiracy claim has already been eliminated, and there is no other particular conduct attributed to Wise, other than perhaps that she did not conduct routine assessments of his flexibility. This is not enough for an ADA claim.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  Failure to make reasonable accommodations to ensure participation in the public entity's programs or services by a person with a disability qualifies as "discrimination." 42 U.S.C. § 12112(b)(5)(A); *Wisc. Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 753 (7th Cir. 2006). In the prison context, a plaintiff can make out a prima facie case of discrimination under the ADA by showing: (1) he is a qualified person; (2) with a disability; (3) the Department of Corrections denied him access to a program or activity because of his disability or otherwise subjected him to discrimination; and (4) the denial or discrimination was by reason of his disability. *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012).  Access to showers, meals, and toilet facilities is considered a "program or activity" within the meaning of the ADA. *Id.* at 672 (noting that inmate access to showers and meals is a program or activity).

As for Dr. Boose, it is certainly conceivable that the deprivation of a wheelchair could pose an ADA issue, but there is simply not enough detail to know if there is a valid ADA claim about this issue.  At most, Plaintiff describes intermittent stints in segregation where he may have been confined to a bed, but he also suggests it was just difficult for him to get around his cell, not that it was impossible.  He does not describe how many times this happened, nor does he indicate if he actually alerted anyone to the problem.  As pled, any ADA claim related to Dr. Boose's conduct is insufficient to proceed.

## ANALYSIS

The Eighth Amendment prohibition on cruel and unusual punishment forbids the unnecessary and wanton infliction of pain. *See Rhodes v. Chapman*, 452 U.S. 337, 346 (1981).

Generally, an inmate must show an objectively serious condition, and a defendant's subjective disregard for a risk to the inmate's health or safety.

Here, Plaintiff alleges that Dr. Boose took his wheelchair away from him during stays in crisis watch from June to August 2023. He alleges that as a result he was primarily contained to his bed, and had trouble accessing the sink, toilet, or food slot. He further alleges the cell was urine infested. Living in a dirty cell might be enough to make out a claim and depriving him of his wheelchair could amount to cruel treatment. He attributes these issues to Dr. Boose, so at this early juncture, Claim 1 may proceed.

Claims 2-4 all deal with alleged excessive force or improper touching. The Eighth Amendment prohibits "unnecessary and wanton infliction of pain, thus forbidding punishment that is 'so totally without penological justification that it results in the gratuitous infliction of suffering.'" *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003) (*quoting Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). Where prison officials harass or touch an inmate in a "manner intended to humiliate and inflict psychological pain," such conduct may constitute cruel and unusual punishment under the Eighth Amendment, even if no serious physical injury results. *Id.*; *see also Beal v. Foster*, 803 F.3d 356, 358 (7th Cir. 2015) (explaining the alleged pain sufficient to constitute an Eighth Amendment violation may be physical or psychological); *Lieberman v. Budz*, 2013 WL 157200, at *14 (N.D. Ill. Jan. 15, 2013) (stating "the right of a prisoner or detainee to be free from sexual harassment" is clearly established, including the right "not to be groped for sexual reasons").

Here, Plaintiff alleges that Defendants Bridwell, Stout, and Reid sexually harassed or assaulted him and used unnecessary force to move him to crisis watch, Defendant Wilson approached him and slapped him totally without provocation, and Defendants Livingston,

Bridwell, Seed, and Crawford maced him and roughed him up without any reason to do so. All of these allegations are sufficient to proceed either under the broad umbrella of cruel and unusual punishment, or as instances of alleged excessive force. Claim 2 will proceed against Bridwell, Stout, and Reid; Claim 3 will proceed against Wilson; and Claim 4 will proceed against Livingston, Bridwell, Seed and Crawford.

Finally, Plaintiff alleges that Defendant Brookhart retaliated against him by denying his grievances emergency status. He also claims these denials were part of a larger conspiracy to prevent him from being able to have problems addressed, or to prevent him from being able to access things like yard, medical and mental health services, and accommodations. These allegations in general terms are concerning, but they lack the level of detail that is necessary to nudge them from conclusory to plausible. As to the retaliation, Plaintiff alleges that Brookhart retaliated by denying his grievances emergency status, but there is no protected interest in the grievance procedure itself, so an error in grievance processing is not enough to state a claim. *See e.g., Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). Though Plaintiff suggests that Brookhart did not take his grievances seriously, or did not expedite them, he does not ultimately contend that this prevented him from seeking redress for the things he grieved. In fact, the IDOC grievance procedure invites an inmate to re-submit a grievance for normal processing if it is deemed non-emergency, and Plaintiff does not claim he could not do this or that doing so was unsuccessful. As such, the Court does not find that the mere grievance handling issue is enough to show retaliation or a constitutional violation by Brookhart.

To the extent that Plaintiff claims Brookhart conspired with others, the Court has already discussed and rejected a conspiracy claim as mentioned above. Further, there is insufficient detail about Brookhart or the other alleged co-conspirators and their discrete actions to understand on a

personal level what Plaintiff alleges that these defendants have done. True, he alleges Bridwell, Livingston, and Crawford participated in various forms of unwanted or excessive physical contact with him, but he does not then tie this into them working to deprive him of medical or mental health care, nor does he explain how Nurse Practitioner Wise is linked to these events. At most, he alleges Brookhart did not deem grievances on this topic to be an emergency, but as the Court already explained that is not enough for a freestanding claim. As such, Claim 5 will be dismissed without prejudice against all Defendants for failure to state a claim because the parameters of this claim are ill-defined, and defendants' personal roles cannot be clearly understood.

DISPOSITION

**IT IS HEREBY ORDERED THAT Claim 1** of the Complaint (Doc. 2) survives initial screening as described above against Dr. Boose, **Claim 2** survives as to Bridwell, Stout, and Reid, **Claim 3** survives as to Wilson, and **Claim 4** survives as to Livingston, Bridwell, Seed, and Crawford. By contrast, **Claim 5** is insufficient to state a claim so it is dismissed without prejudice. There are no valid claims against Defendants DeeDee Brookhart, or Nurse Practitioner Wise, so the Clerk of Court is **DIRECTED** to **TERMINATE** these parties.

The Clerk of Court is **DIRECTED** to prepare for Dr. Boose, Sgt. Stout, Sgt. Bridwell, Lt. Reid, Sgt. Wilson, Lt. Livingston, C/O Crawford, and C/O Seed: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 2), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff. If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal

service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.**

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change of address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute. FED. R. CIV. P. 41(b).

As the Court previously explained, because Plaintiff has opted to proceed with this case, he is obligated to pay the $405 filing fee or to apply to proceed *in forma pauperis*. Plaintiff **must pay the filing fee or apply to proceed IFP by the previously set deadline—July 19, 2024**.

Finally, this matter may involve the exchange of medical records, so the Clerk of Court is **DIRECTED** to enter the standard HIPAA Order.

**IT IS SO ORDERED.**

Dated: June 17, 2024

*s/ Reona J. Daly*
**Reona J. Daly**
**United States Magistrate Judge**

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear. As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.